Nelson, Ch. J.
The first section of the act of April 5th, 1803, "provides, “ That the title to all lands heretofore granted by letters patent to officers and soldiers serving in the line of this state, in ,the army of the United States in the late war with Great Britain, and who died previous to the 27th day of March, 1783, shall he, and hereby is declared to have been, vested in the said persons at the time of their deaths respectively.” (3 Laws N. Y. 26th Less, p. 399.)
*305 Under this act it has been repeatedly decided, that the soldier is to be regarded as vested in all respects with the legal estate, the same as if the patent had issued before his death. (Jackson v. Phelps, 3 Caines, 62. Jackson v. Winslow, 2 John. R. 80. Jackson v. Howe, 14 id, 405.)
By the eighth section of the same act, the rules of descent as established by the act to abolish entails, &c. are made applicable to, and are to govern' in all cases provided for by the first section, except where the lands or any part thereof, were, on the 5th of April, 1803, held by bona fide purchasers or devisees, under any person or persons who would have been the heirs at law of the patentees if this section had not passed.
Our act abolishing entails and regulating descents was passed on the 23d of February, 1786, (see 1 R. L. of 1813, p. 52,) and did not therefore reach this case, as Micajah Sherwood died in 1778, when the law of primogeniture was in force in this state. James, being the eldest brother of Micajah, was therefore his heir at law ; and having conveyed before the act of 1803 to a bona fide purchaser, under whom the defendant claims, it is clear that the latter is within the exception contained in the eighth section.
The plain object of the first and eighth sections of the act of 1803, taken together, was to confirm the title of the heir or heirs of the soldier, and of all persons deriving title from or through them as purchasers and devisees. The estate is made to take the same direction as if the patent had been issued to the soldier himself while living. By the act the title to the land is declared to be vested in the soldier at the time of his death. This enables the heir to inherit. The act then regulates the mode of inheritance and line of descent, which might, under the peculiar nature of the estate, have cut off purchasers and devisees, were it not for the latter part of the eighth section, which expressly saves their rights where they make claim under any person or persons who were heirs at law at the time of the conveyances or devise.
Thus, the right and title of all seem to have been placed *306 by the statute upon the same footing as if the soldier had been actually seised at his death of the legal estate, and it had come down through any of the ordinary modes of transferring title to real property.
But the purchaser takes the estate cum onere. If the heir from whom he derives title has encumbered it by mortgage or otherwise, he takes subject to the charge, the same as in any other case of purchase; and so as to the devisee of the heir, who is put in the same category with the purchaser. If a lease of the premises for life or for years has been made by the heir before the conveyance or devise, the purchaser or devisee must take subject to it; and the same rule prevails in respect to an inchoate estate in dower, or any other interest created either by act of law or of the heir.
There is no possible reason for extending more favor to a purchaser in a case like this, than to one standing in that relation in ordinary cases; for it is to be presumed that, in the sale of the premises, an abatement in the purchase money was made, corresponding to any charge or incumbrance upon the property whether created by act of law or by the heir. It is also to be considered that the bounty of the state was intended for the family and heirs of the soldier, and not for the purchaser. His rights, however, are saved and fully protected, by being regarded in the same light as if the soldier had been actually seised at his death, and the estate had descended to the heir and been vested in him at the time of the purchase. Upon this view of the case, the widow of the heir would be entitled to her dower.
For the reasons already assigned, I cannot agree that the title to the lot was virtually given to the purchaser or devisee by operation of the eighth section of the act of 1803, and passed through the heir or heirs from the soldier as mere matter of form. Such a construction would clear the estate of all liens or incumbrances made by the heir for his benefit, and which, it is to be presumed, were regarded by the parties in determining the price to be paid by the purchaser.
*307 But there is another ground entirely decisive of this case. The defendant is estopped from denying the seisin of the plaintiff’s husband, inasmuch as he is in possession and holds under him. (Bowne v. Potter, 17 Wendell, 164, and the cases there cited.) Such has been the uniform doctrine of this court from an early day.
The action of ejectment is now the appropriate remedy for the recovery of dower, and like the action in any other case, must be brought against the actual occupant if there be one; if not, then against any person exercising acts of ownership over the premises, or claiming to have an interest in them. (2 R. S. 230, § 2, subd. 2, and § 4, 2d ed.)
Cowen, J.
The learned justice of this court who delivered the opinion in Shaver v. M’Graw, (12 Wendell, 558, 562,) expressed a doubt whether ejectment for dower, which is given by the revised statutes instead of our former remedy by writ of dower unde nihil habet, must not, like the latter, be brought against the tenant of the freehold. On reflection, we think it quite clear, however, that ejectment for dower, like that action founded upon any other title, will lie, and indeed must be brought against the person in possession, if there be one, whether he be seised of a freehold, or possessed of a term for years, or a less estate. By giving ejectment the statute gives all its practical incidents; and it is of the nature of this action that it will not lie against the tenant of the freehold, except in the cases specially provided for,(a) unless he be in actual possession.
The decisive question is, whether the seisin of James Sherwood was made out in that sense which entitled his widow, the now plaintiff, to recover. The truth is, I think, he never was seized of any interest beneficial to himself; but on the contrary only for an instant, and that for the benefit of Nathan Paddock his grantee. And if we can notice that fact, I have not a doubt that the verdict should be for the defendant. It is settled that such a seisin is not sufii *308 cient to confer- any right on the widow. (Stow v. Tifft, 15 John. 458, and the cases there cited.) But the case cited was disembarrassed from the doctrine of estoppel which, under our decisions, presses heavily if not conclusively against the defendant. (Bowne v. Potter, 17 Wend. 164.) The case of Stow v. Tifft, was one of a deed to the husband and a mortgage back, both of which the court considered as making but one instrument. There was nothing, therefore, in that case to work an estoppel. Here we have the simple conveyance of the husband to Paddock in fee, and under him the defendant claims, The case is the same as if the action were against Paddock ot any of the grantees who derived title from him. If he would have been estopped, the defendant is also estopped by reason of privity.
I should be very glad to distinguish this case from Bowne v. Potter, but it is precisely the same, except in the want of warranty in the deed from the husband to Paddock. No particular stress was laid on the warranty, however, in Bowne v. Potter. Chief Justice Nelson there put the estoppel upon the naked fact that the defendant claimed through a deed from the husband. That the defendant’s claiming under the husband or his heirs works an estoppel, had before been repeatedly and strongly asserted by this court. (Hitchcock v. Harrington, 6 John. 290. Same v. Carpenter, 9 id. 344. Collins v. Torry, 7 id. 278, 282. Davis v. Darrow, 12, Wend. 65.)
The case of Bowne v. Potter, underwent a good deal of examination, though it proceeded "mainly upon the. authorities I have mentioned, and others cited in them from the English books which were explained and understood to raise the doctrine of estoppel, and this too by very learned judges, among whom was the late Chief Justice Kent. In our series of cases the question seems to have been expressly considered in all its phases with reference to" that doctrine, if we except mutuality; and on the want of that, I see the notion of an estoppel has been denied by the English C. B. in Gaunt v. Wainman, (3 Bing. N. C. 69.) The court say in effect, the widow is not a party nor privy. *309 She claims by title paramount. She is not estopped; and therefore the tenant is not. Suppose, said Tindal. C. J., the husband had been seised of a freehold, and the defendant had •purchased the land of him as leasehold; would this have estopped the widow ? (And vide per Nelson, Ch. J., in Jewell v. Harrington, 19 Wend. 472, 3.) Perhaps that view is conclusive, but it was involved in all the cases decided by this court and was, in effect, repudiated by them. I will not deny that the question may be a very fit one for review in the court of errors. I think it may; but there is no conflict in the decisions of this court, and I do not see that we can properly revise them.
On our authorities, though I admit we have probably misapplied the doctrine of estoppel, I think a new trial should be denied.
Bronson, J., concurred in the result.
New trial denied.

 See 2 R. S. 230, § 4, 2d ed.)